**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILLSIDE DRILLING INC., a California Corporation, on its own behalf, and a pass through claims with THOMPSON PACIFIC CONSTRUCTION, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP; JAMESTOWN EQUITY PARTNERS LLC; CITICORP USA, INC.; NOTEWARE DEVELOPMENT, LLC; JAMES NOTEWARE,<br><br>Defendants . / | No. C 09-1896 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT, AND GRANTING LEAVE TO AMEND** |

Defendants The Goldman Sachs Group ("Goldman Sachs") and Citicorp USA, Inc. ("Citicorp") have filed several motions which are scheduled for a hearing on July 31, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds that the matters are appropriate for resolution without oral argument, and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS defendants' motions and GRANTS plaintiffs leave to amend the complaint. If plaintiffs wish to amend the complaint they must do so no later than **August 14, 2009**.

**BACKGROUND**

This case arises out of a failed construction project in San Francisco called the Jamestown

Condominium Project ("Jamestown Project"). Plaintiff Thompson Pacific, Inc. ("Thompson") was the general contractor on the Jamestown Project, and plaintiff Hillside Drilling Inc. was a subcontractor. Thompson and Jamestown Equity Partners, LLC ("Jamestown LLC") entered into a contract on September 11, 2006 for the construction of the Jamestown Project. Johnston Decl., Ex. 1 at 1. The project experienced construction cost increases and delays, and eventually Jamestown LLC stopped work on the project because it had run out of money. First Amended Complaint ¶ 56.

On February 4, 2009, Hillside and Thompson filed a complaint in state court against The Goldman Sachs Group, Goldman Sachs Urban Investment Group, Jamestown LLC, SF Third Street Equity Partners LLC, Noteware Development LLC, and James Noteware. In response to The Goldman Sachs Group's demurrer and motion to strike, plaintiffs amended their complaint. The amended complaint deleted SF Third Street Equity Partners LLC and added defendants Citigroup, Inc. and Citibank Corp. On April 30, 2009, The Goldman Sachs Group removed this case on the basis of diversity jurisdiction.

Currently before the Court are motions to dismiss, strike and for a more definite statement filed by The Goldman Sachs Group, Inc. and Citicorp USA, Inc.[1] Against all defendants,[2] plaintiffs allege claims for breach of contract, foreclosure of mechanic's lien, fraud and negligent misrepresentation, equitable lien, quantum meruit/unjust enrichment, breach of the implied in fact contract, and detrimental reliance. The first amended complaint alleges that "Jamestown [LLC] is owned, controlled and operated by Defendant Goldman Sachs & Company, Urban Investment Group, while, based upon information and belief, Citigroup holds [the] first deed of trust to the property owned by Jamestown [LLC]." FAC ¶ 7. The FAC also alleges that the two Goldman Sachs entities named as defendants "are the alter egos and agents of one another, and each acts in unison with the other," and that "Goldman and Citigroup

---

[1] Citicorp USA Inc.'s motion states that it was erroneously sued as Citigroup. The other defendants have not answered the first amended complaint and the status of service on defendants is unclear, as neither the state court docket (attached as Exhibit 3 to the Hanson Decl. in Support of Notice of Removal) nor this Court's docket contain any proofs of service of the first amended complaint.

[2] As noted in defendants' motions for a more definite statement, the complaint refers to "defendants" throughout, and thus it appears that all claims are alleged against all defendants. As discussed *infra*, if plaintiffs amend the complaint, they are directed to specify which claims are alleged against which defendants, and to specifically allege what acts are attributed to each defendant.

2

each own the primary legal and equitable interest in the subject property." *Id*. ¶¶ 14-15. Plaintiffs attached numerous exhibits to the complaint, including the contract entered into by Jamestown LLC and Thompson and the subcontract between Thompson and Hillside.[3]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While courts do not require "heightened fact pleading of specifics," *id.*, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.* In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Both defendants move to dismiss all claims against them on numerous grounds. Defendants correctly argue that plaintiffs have not stated a breach of contract claim because the FAC does not

---

[3] These contracts and other exhibits attached to the first amended complaint were not separated from each other and were jointly labeled "Exhibit A." Goldman Sachs has organized the exhibits attached to the FAC and refiled them in connection with the Johnson Declaration in support of the motion to dismiss.

3

identify any contract between plaintiffs and either Goldman Sachs or Citicorp. Instead, the only contracts identified in the FAC and attached thereto are the September 11, 2006 contract between Jamestown LLC and Thompson, and the subcontract between Thompson and Hillside. Accordingly, plaintiffs have not stated claims for breach of contract as a matter of law. *See Tri-Continent Int'l Corp. v. Paris Savings & Loan Assn.*, 12 Cal. App. 4th 1354, 1359 (1993) ("Tri-Continent cannot assert a claim for breach of contract against one who is not a party to the contract."). Similarly, plaintiffs' breach of the implied in fact contract is barred by the statute of frauds unless there is some writing to which defendants are a party whereby defendants agreed to assume Jamestown LLC's debt. *See* Cal. Civ. Code § 1624(a)(2) ("The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent . . . (2) A special promise to answer for the debt, default, or miscarriage of another . . . .").

As currently pled, plaintiffs' remaining claims are also deficient. For example, plaintiffs can only maintain a mechanic's lien claim against Goldman Sachs if Goldman Sachs owns or has a legal interest in the Jamestown Project. *See* Cal. Civ. Code § 3110. The FAC contains the bare conclusory allegation that Goldman Sachs is the "owner" of the Jamestown Project. However, that allegation is contradicted by all of the contracts and other documents attached to the FAC which identify Jamestown LLC as the owner. With regard to Citicorp, the FAC alleges that Citicorp holds a first deed of trust on the Jamestown Project. FAC ¶ 6. The FAC does not contain any allegations showing why their mechanic's lien takes priority over Citicorp's first deed of trust. *See* Cal. Civ. Code § 3134 (mechanic's liens are "preferred to any lien, mortgage, deed of trust, or other encumbrance upon the work of improvement and the site, which attaches *subsequent* to the commencement of the work of improvement, and also to any lien, mortgage, deed of trust, or other encumbrance *of which the claimant had no notice* and which was unrecorded at the time of commencement of the work of improvement.") (emphasis added); *see also Barr Lumber Co. v. Shaffer*, 108 Cal. App. 2d 14, 21 (1951).

Plaintiffs' fraud and misrepresentation claims are similarly defective. These claims lack essential elements and they are not pled with particularity as required by Federal Rule of Civil Procedure 9(b). For example, the FAC does not identify any alleged misrepresentations by Citicorp, and contains only vague allegations about misrepresentations by Goldman Sachs. Claims "of fraud must

be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc.* (*In re Glenfed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994). Here, the complaint does not identify when the alleged misrepresentations were made or why they were false or misleading. *See, e.g.*, FAC ¶ 39 ("Based upon information and belief, Alicia Glen of Goldman Sachs made it perfectly clear in phone calls to Peter Thompson of Thompson Pacific that Goldman Sachs were financially backing the deal and that Citigroup was secured as a lender, ensuring that Plaintiff Thompson would get paid, and she specifically stated that she wanted to have this project turn out since Goldman Sachs was attempting to establish a presence in San Francisco.").[4]

Plaintiffs' oppositions – which are virtually identical – do not specifically address any of defendants' arguments about any particular claims. Instead, plaintiffs generally assert that they can pursue claims against Goldman Sachs and Citicorp because, despite the fact that those defendants are not parties to the Jamestown Project contract, their "fingerprints are all over the contract." Plaintiffs cite five paragraphs in the FAC which generally allege that defendants are the "alter egos" of each other. *See* FAC ¶¶ 9, 11, 14, 34, and 65.[5] Plaintiffs argue that "[i]n the interests of justice and to prevent fraud, the courts will ignore the existence of a corporate entity used to cut off causes of action against an entity or individual," and that "plaintiffs may pierce the corporate veil." Plaintiffs have also submitted the declaration of Peter Thompson, the president and CEO of Thompson. Mr. Thompson states, *inter alia*,

---

[4] The remaining claims for equitable lien, unjust enrichment/quantum meruit, and detrimental reliance are lacking for the reasons set forth in defendants' papers. Regarding an equitable lien claim, *see generally Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 454 (1997); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1421 (1988); and Cal. Civ. Code § 3264. Regarding an unjust enrichment/quantum meruit claim, *see generally McBride v. Broughton*, 123 Cal. App. 4th 379, 387-88 (2004). Finally, plaintiffs have not identified any authority for the proposition that "detrimental reliance" is a stand-alone claim, as opposed to an element of other causes of action, such as fraud.

[5] For example, paragraph 34 alleges "Each Defendant has conspired and/or acted as the alter ego of one another in soliciting Plaintiffs to perform the work for which they were not paid, and knowingly and fraudulently induced Plaintiffs to perform work and enrich Defendants all to the detriment of Plaintiffs." Paragraph 65 alleges "Plaintiffs state the following counts and causes of action against each defendant in their individual capacity, and joint capacity as co-conspirators, agents and/or alter egos."

5

that "when payments were not forthcoming, my primary line of communication was with official representatives of Goldman Sachs," and that "[a]s noted from my emails [attached to the declaration], all negotiations regarding payment and scheduling were with Goldman Sachs, and no other entity or individual." Thompson Decl. ¶¶ 3, 7.

As defendants correctly note in their reply briefs, much of the information contained in the Thompson Declaration is not alleged in the FAC, and the Court must address the FAC as it is pled. Moreover, "courts generally treat the alter ego doctrine as a drastic remedy and disregard the corporate form only reluctantly and cautiously." *Wechsler v. Macke Int'l Trade, Inc*., 486 F.3d 1286, 1295 (Fed. Cir. 2007) (citations omitted). To make out a *prima facie* case of alter ego liability, plaintiffs must demonstrate: "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (brackets in original). When courts consider the alter ego doctrine they look to "numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002).

The current complaint does not allege facts showing a basis for holding Goldman Sachs liable on an alter ego, or any other, basis. Accordingly, for that reason and all of the reasons stated above, the Court GRANTS defendant's motion and GRANTS plaintiff leave to amend. Similarly, as explained above, the FAC does not state any claims against Citicorp, and thus the Court GRANTS defendant's motion and GRANTS leave to amend. If plaintiffs choose to amend the complaint, they must (1) plead facts supporting elements of every cause of action alleged, (2) plead any fraud and misrepresentation claims with particularity, and (3) specifically identify which defendant is alleged to have committed which act (in other words, do not allege that "defendants" did something unless *all* defendants are involved in the particular act).

The Court also GRANTS defendants' motions to strike all inflammatory and irrelevant

6

allegations in the complaint regarding defendants' alleged involvement in the national and global economic crisis and use of government bailout funds.[6]  With regard to plaintiffs' request for punitive damages, if plaintiffs' amended complaint seeks punitive damages, plaintiffs must ensure that there is a legal basis for doing so.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions to dismiss, motions to strike and motions for a more definite statement, and GRANTS plaintiffs leave to amend.  (Docket Nos. 8 & 15).  If plaintiffs wish to amend the complaint, they must do so no later than **August 14, 2009**.

**IT IS SO ORDERED.**

Dated: July 27, 2009

SUSAN ILLSTON
United States District Judge

---

[6] Paragraph 19 is representative: "Based upon information and belief, Citigroup and Goldman Sachs in-part withheld funding due tot heir own financial issues attributed in large part to irresponsible financial transaction institutions [sic] that Citigroup and Goldman Sachs have collectively contributed to the current economic collapse of the United States of America."  FAC ¶ 19.